UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80606-CIV-MARRA

MARK BRUEGGEMANN, on behalf of
themselves and all those similarly situated,

Plaintiff,

vs.

NCOA SELECT, INC., (d/b/a National
Cellular Owners Association);
OVERSTOCK.COM, INC., and
DOES 1 through 100, inclusive,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant NCOA Select, Inc.'s Motion to Dismiss

First Amended Complaint (DE 19) and Defendant Overstock.com, Inc.'s Motion to Dismiss First

Amended Complaint, Stay Pending Arbitration and/or Transfer Venue (DE 22).  On May 8,

2009, the Court heard oral argument on the motions.  The motions are fully briefed and ripe for

review.  The Court has carefully considered the motions and is otherwise fully advised in the

premises.

The First Amended Complaint

Plaintiff Mark Brueggemann ("Plaintiff"), a California resident, brings a class-action suit

against Defendants NCOA Select, Inc. ("NCOA") and Overstock.com, Inc. ("Overstock")

(collectively "Defendants") for  breach of contract (count one); violation of the Florida Deceptive

and Unfair Trade Practices Act pursuant to Florida Statute § §501.201 and 634.435 (counts two

and three); unjust enrichment (count four); breach of express warranty (count five) and

declaratory relief (count six).   The allegations of the First Amended Complaint are as follows:

On or about January 17, 2007, Plaintiff made an online purchase of a cellular telephone from

Overstock.  As part of the purchase process, Overstock advertised a number of additional options

and accessories, including an option for insurance. (First Am. Compl. ¶ 15.)  After clicking on

the option for insurance, Plaintiff was informed that the phone would be "covered for repair or

replacement with no deductible" and that covered incidents included "loss of the wireless

device."  At the same time, the "fine print" of the advertisement states that "negligence, water

damage or loss" is not covered.  (First Am. Compl. ¶ 16.)  Plaintiff purchased the insurance plan

and, after losing his cellular telephone, reported the loss. (First Am. Compl. ¶ ¶ 17-18.)  The

claim was denied under the "loss, unexplained disappearance, negligent loss" exclusion. (First

Am. Compl. ¶ 19.)

      Overstock's website led Plaintiff to believe that the insurance he purchased was offered

by Overstock. Only after his claim was denied did Plaintiff learn that Overstock had "secretly

redirected" him to a website known as Inphonic, Inc., the website where Plaintiff purchased the

telephone and insurance issued by NCOA.  (First Am. Compl. ¶ 21.)  Overstock and NCOA

conspired to confuse consumers into believing that the NCOA insurance was an Overstock

product. (First Am. Compl. ¶ 23.)  Neither Overstock nor NCOA was licensed to sell insurance.

(First Am. Compl. ¶ 24.)

      In addition, Overstock imposed unconscionable contract provisions on consumers

purchasing through its website by including the following "fine print:" "By submitting your

order, you are agreeing to our terms and conditions."  The terms and conditions are never

specifically disclosed to consumers.  These "oppressive" terms include a disclaimer of liability

for any activities that occur on their website, requiring consumers to submit their claims to

binding arbitration in Utah and pay the arbitration fees, prohibiting class actions, and permitting

Overstock to avoid arbitration for certain disputes.  Plaintiff never saw or agreed to these terms.

(First. Am. Compl. ¶ 22.)

**OVERSTOCK'S MOTION TO COMPEL ARBITRATION**

Overstock has moved to stay the case pending arbitration, claiming that Plaintiff has

agreed to participate in a binding arbitration to resolve all disputes arising out of his use of and

purchasing from the Overstock website.  Overstock has submitted an affidavit from Jonathan

Johnson, the president of Overstock.  Mr. Johnson states that all retail purchases made from

Overstock are conducted through its website, and that when an individual accesses the website,

he or she accepts Overstock's terms and conditions which include the arbitration agreement.

(Johnson Affidavit ¶ 5, DE 22-2.)  In fact, prior to entering the website, individuals are told,

"[e]ntering this Site will constitute your acceptance of these terms  and conditions. If you do not

agree to abide by these terms, please do not enter the Site." (Terms and Conditions, DE 22-2.)

The arbitration agreement found in the terms and conditions states, in relevant part, that "[a]ny

dispute relating in any way to your visit to the Site or to products you purchase through the Site

shall be submitted to confidential arbitration in Salt Lake City, Utah." (Arbitration Agreement,

DE 22-2.)

Plaintiff responds that he never agreed to arbitration and that arbitration clause in

Overstock's terms and condition are unconscionable.   After careful consideration, the Court

finds that Plaintiff's claims against Overstock are subject to arbitration.

There is a strong federal policy supporting arbitration agreements.  See <u>Moses H. Cone</u>

3

Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  One of the purposes of the FAA

is "ensure judicial enforcement of privately made agreements to arbitrate."  Dean Witter

Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). Arbitration agreements must be "rigorously

enforce[d]" by the courts and courts must compel arbitration if the parties have agreed to

arbitrate the dispute.  Id. at 221; 9 U.S.C. § 3.  Accordingly, "the first task of a court asked to

compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that

dispute."  Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) citing

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); see

Telecom Italia v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001) (a court cannot

require parties to arbitrate disputes that they have not previously agreed to arbitrate).

Significantly, "[t]he party seeking to avoid arbitration must unequivocally deny that an

agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial."

Wheat, First Securities, Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993).

    Here, the broad language of the arbitration agreement clearly encompasses Plaintiff's

disputes with Overstock. Furthermore, Plaintiff has not provided any sworn statements or

evidence in support of his contention that he never saw or agreed to Overstock's terms and

conditions.  In contrast, Overstock has provided evidence that supports a finding that the parties

agreed to arbitrate the type of dispute brought by Plaintiff.  Based on this evidence, the Court

finds that the dispute is subject to arbitration.

    Nonetheless, Plaintiff challenges the enforcement of the agreement to arbitrate by arguing

that the agreement is procedurally and substantively unconscionable.  Specifically, Plaintiff states

that the arbitration is prohibitively expensive and that the forum selection clause and class action

bar are unconscionable.  "Under Florida law, [a] [p]laintiff carr[ies] the burden of establishing

that the arbitration provision at issue is both procedurally and substantively unconscionable."[1]

Sanders v. Comcast Cable Holdings, LLC, No. 3:07-cv-918-J-33HTS, 2008 WL 150479, at * 6

(M.D. Fla. Jan. 14, 2008); Murphy v. Courtesy Ford, LLC, 944 So. 2d 1131, 1134 (Fla. Dist. Ct.

App. 2006); Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 288 (Fla. Dist. Ct.

App. 2003).  "The procedural component of unconscionability relates to the manner in which the

contract was entered and it involves consideration of such issues as the relative bargaining power

of the parties and their ability to know and understand the disputed contract terms."  Voicestream

Wireless Corp. v. U.S. Communications, Inc., 912 So. 2d 34, 39 (Fla. Dist. Ct. App. 2005).

Substantive unconscionability requires a determination that the "the terms of the contract are so

outrageously unfair as to the shock the judicial conscience."  Sanders, 2008 WL 150479, at * 6.

　　　With respect to procedural unconscionablility, Plaintiff argues that Overstock's terms and

conditions constitute an adhesion contract that does not allow consumers to bargain with the

terms. In support, Plaintiff cites to Powertel, Inc. v. Bexley, 743 So. 2d 570 (Fla. Dist. Ct. App.

1999).  There, the court examined an arbitration clause that was added to a cellular telephone

service contract with existing customers.  The arbitration clause was sent to customers as an

insert to monthly bills and customers could not reject the arbitration provision and continue to

use the service plans they had already purchased.  Furthermore, those customers had previously

purchased equipment and obtained telephone numbers that were compatible only with the

---

[1] "The FAA allows state law to invalidate an arbitration agreement, provided the law at
issue governs contracts generally and not arbitration agreements specifically." Bess v. Check
Express, 294 F.3d 1298, 1306 (11th Cir. 2002) citing Doctor's Assocs., Inc. v. Casarotto, 517
U.S. 681, 686 (1996).

company's service.  Based on these factors, that court held that the arbitration clause was procedurally unconscionable.  Id. at 575.  While Overstock admits that the terms and the conditions state that individuals should not enter the website unless they agree to abide by the terms and conditions, that fact does not, standing alone, render the arbitration agreement procedurally unconscionable.  See Rivera v. AT & T Corp., 420 F. Supp. 2d 1312 (S.D. Fla. 2006) (a contract of adhesion is not "automatically" procedurally unconscionable).  Significantly, none of the other factors present in Powertel are present here.  Lastly, although Plaintiff states that consumers are never confronted with the terms and conditions and/or are forced to agree to them, Plaintiff has not produced any evidence for the Court to consider on this point.

Next, the Court will consider the arguments relating to substantive unconscionability. The Court begins by rejecting Plaintiff's argument that the class action bar in Overstock's terms and conditions is unconscionable.[2]  The Eleventh Circuit has held that class action waivers in arbitration agreements are valid and enforceable, especially when the plaintiff would still be entitled to attorney's fees awards.  See  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005)(claims brought pursuant to statutes that provided for an award of attorney's fees); Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868 (11th Cir. 2005)(arbitration agreement permitted the prevailing party to receive an award of attorney's fees if allowed by statute or applicable law); cf. Dale v. Comcast Corp., 498 F.3d 1216, 1221 n. 8 (11th Cir. 2007) (noting the significance of the ability to recover attorney's fees in determining the enforceability of a class action waiver in an arbitration agreement).  Here, Plaintiff has

---

[2] Specifically, the arbitration agreement states that "no arbitration under this Agreement shall be joined to an arbitration involving any other party subject to this Agreement, whether through class arbitration proceedings or otherwise."(Arbitration Agreement.)

brought a FDUTPA claim, which permits attorney's fees to prevailing plaintiffs.  Florida Statute

§ 501.2105.  Thus, the class action waiver is not unconscionable.  Sanders, 2008 WL 150479, at

* 10.

       Equally unavailing is Plaintiff's contention that the disclaimer of liability in Overstock's

terms and conditions is substantively unconscionable.[3]  Regardless of whether the limitation of

liability is valid under the law, the severability clause[4] contained in Overstock's terms and

conditions does not affect the intent of the parties to arbitrate.  Alterra Healthcare Corp. v.

Bryant, 937 So. 2d 263 (Fla. Dist. Ct. App. 2006) quoting  Voicestream Wireless Corp. v. U.S.

Communications, Inc., 912 So. 2d 34 (Fla. Dist. Ct. App. 2005) ("where the contract contains a

severability clause, [its] presence does not require a holding that the arbitration agreement is [ ]

unenforceable.");  see Healthcomp Evaluation Svcs. Corp. v. O'Donnell, 817 So. 2d 1095, 1098

(Fla. Dist. Ct.  App. 2002).

---

   [3] This provision states as follows: "Under no circumstances shall Overstock.com or its
Associates be liable for any direct, indirect, incidental, special or consequential damages that
result from the use of or inability to sue the Site, including but not limited to reliance by a user on
any information obtained at the Site, or that result from mistakes, omissions, interruptions,
deletion of files or e-mail, errors, defects, viruses, delays in operation or transmission, or any
failure or performance, whether or not resulting from acts of God, communications failure, theft,
destruction or unauthorized access to Overstock.com records, programs or services.  The
foregoing limitation of liability shall apply whether in an action of contract, negligence, or other
tortious action, even if an authorized representative of Overstock.com has been advised or should
have knowledge of the possibility of such damages.  You hereby acknowledge that this paragraph
shall apply to all content, merchandise and services available through the Site.  Because some
states do not allow the exclusion or limitation of liability for consequential or incidental
damages, in such states liability is limited to the fullest extent permitted by law."  (Terms and
Conditions.)

   [4] The severability clause states that "[i]f any of the[] [Terms and Conditions are] deemed
invalid, void or for any reason unenforceable, that condition shall be deemed severable and shall
not affect the validity and enforceability of any remaining condition." (Terms and Conditions.)

7

Turning to Plaintiff's argument that arbitration is Utah is prohibitively expensive, the Court notes that Plaintiff, not Defendant, bears the burden to show the likelihood of incurring prohibitive costs from arbitration.  Anders v. Hometown Mortgage Svcs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003) citing Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000) ("a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, [ ] bears the burden of showing the likelihood of incurring such costs.") Plaintiff has failed to meet this burden, which mitigates against a finding of substantive unconscionability.  This is particularly the case here, where Defendant has offered to pay Plaintiff's arbitration fee, and Plaintiff, who is from California, has chosen to litigate the case in Florida.  The Court is hard-pressed to understand how litigating this case in Florida is any less of a financial burden than arbitrating the case in Utah.

Lastly, the arbitration agreement includes a provision reserving Overstock's ability to seek relief for violations of its intellectual property rights.[5]  It is true that "where one party is bound to arbitration of its claims but the other is not, there can be substantive unconscionability." Hialeah Automotive, LLC v. Basulto, — So. 2d —, 2009 WL 187584, at * 4 (Fla. Dist. Ct. App. Jan. 28, 2009); see Palm Beach Motor Cars Ltd. v. Jeffries, 885 So.2d 990, 992 (Fla. Dist. Ct. App. 2004); Bellsouth Mobility LLC v. Christopher, 819 So. 2d 171, 173 (Fla. Dist. Ct. App. 2002).  However, given that Plaintiff has been unable to show the arbitration agreement was

---

[5] "[A]ny dispute relating in any way to your visit to the Site or to products you purchase through the Site shall be submitted to confidential arbitration in Salt Lake City, Utah, except that, to the extent you have in any manner violated or threatened to violate Overstock.com's intellectual property rights, Overstock.com may seek injunctive or other appropriate relief in any state or federal court in the state of Utah, and you consent to exclusive jurisdiction and venue in such courts."  (Arbitration Agreement.)

procedurally unconscionable, it is unnecessary to address whether this provision renders the agreement substantively unconscionable.  See Sanders v. Comcast Cable Holdings, LLC,, 2008 WL 150479, at * 6 (Under Florida law, [a] [p]laintiff carr[ies] the burden of establishing that the arbitration provision at issue is *both* procedurally and substantively unconscionable.") (emphasis added).

Based on the foregoing, the Court finds that the arbitration agreement is not unconscionable and therefore must be enforced.[6]  Thus, Plaintiff is bound to arbitrate his claim against Overstock and the case against Overstock is stayed pending arbitration.

## NCOA'S MOTION TO DISMISS

NCOA moves to dismiss the First Amended Complaint in its entirety.  NCOA argues that the claim for breach of the covenant of good faith and fair dealing must be dismissed because Plaintiff does not allege an express contract provision.  With respect to the FDUTPA claim, NCOA claims that this statute is inapplicable to injuries that did not occur within Florida's borders.  Next, NCOA also claims that Plaintiff cannot pursue an unjust enrichment claim when an express contract exists.  Furthermore, NCOA contends that the claim for breach of express warranty must fail because Plaintiff has not identified any specific warranty.  In addition, NCOA attacks the declaratory claim, contending that declaratory judgment is inappropriate when a plaintiff has not pled that he is uncertain about his rights.  Lastly, NCOA challenges the allegations pertaining to the class action.

---

[6] The Court need not address the remaining arguments made by either Plaintiff or Overstock, given that the case will proceed to arbitration.

Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Discussion[7]

A. Count I

NCOA seeks dismissal of this claim and argues that the claim for breach of the covenant of good faith and fair dealing must be dismissed because Plaintiff does not allege breach of an express contract provision.

This claim is labeled "breach of  contract" and alleges that an insurance contract to replace cellular telephones that were lost, damaged or stolen existed between Defendants and the class.  Plaintiff states that Defendants breached the contract by relying on exclusions in the

---

[7] Given that the Court is granting the stay as to Overstock, the Court will not consider the merits of any of the claims asserted in the First Amended Complaint against Overstock pending resolution of the arbitration.

contract.  In addition, Plaintiff also states that Defendants have breached the covenant of good faith and fair dealing. (First Am. Compl. ¶¶ 42-44.)   After reviewing the First Amended Complaint, the Court has determined that this claim must be re-pled.

To begin, while this claim seeks relief from both Defendants, the factual allegations preceding this count appear to state that Plaintiff entered into the insurance contract with NCOA, not Overstock.  (First Am. Compl. ¶¶ 12-14, 18-21.)  Paragraphs 41 through 46 of the First Amended Complaint, however, are lodged against both Defendants.  Given that the claims against Overstock are stayed pending arbitration, this count must be re-pled to identify NCOA as the entity which offered Plaintiff insurance and breached the contract.  On the other hand, if Plaintiff intended to bring this claim solely against Overstock, this claim cannot be pursued at this time.  Next, although this count is labeled "breach of contract," this count does not allege a breach of contract. Instead, it is alleged that the contract contains exclusions and that Defendants breached the contract by relying on these exclusions. (First Am. Compl. ¶¶ 43-44.)  Of course, reliance on a contract's exclusion cannot constitute a breach of a contract.

Finally, with respect to a claim for the breach of the covenant of good faith and fair dealing, the Eleventh Circuit has held that "a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Centurion Air Cargo, Inc. v. United Parcel Svc. Co., 420 F.3d 1146, 1152 (11th Cir. 2005); Burger King Corp. v. Weaver, 169 F.3d 1310, 1316 (11th Cir. 1999).   The breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches instead to the performance of a specific contractual obligation. Centurion Air, 420 F.3d at 1151; Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787,

792 (Fla. Dist. Ct. App. 2005).  In addition, a breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim. <u>Enola Contracting Svcs, Inc. v. URS Group, Inc.</u>, No. 5:08cv2-RS-EMT, 2008 WL 1844612, at * 3 (N.D. Fla. Apr. 23, 2008); <u>Trief v. American General Life Ins. Co.</u>, 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006); <u>Shibata v. Lim</u>, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).  Plaintiff has failed to comply with these legal requirements.  If Plaintiff attempts to re-plead this claim, he must identify the express contractual provision allegedly breached and he must take care not to duplicate the allegations supporting the breach of contract claim.

For the foregoing reasons, the breach of contract claim is dismissed and Plaintiff is granted leave to amend.

B.  Counts II and III

NCOA moves to dismiss Plaintiff's FDUTPA claims, arguing that this statute only applies to claims where the "allegedly illegal conduct took place entirely in Florida." In making this argument, NCOA relies upon <u>Millennium Communications & Fulfillment, Inc. v. Office of Attorney General</u>, 761 So. 2d 1256 (Fla. Dist. Ct. App. 2000).   In this case, the Florida Office of the Attorney General brought suit under FDUTPA against a Florida corporation that solicited consumers located outside the state of Florida.  <u>Id.</u> at 1257.   The corporation moved to dismiss on the grounds that FDUTPA was inapplicable to its transactions with non-Florida consumers. <u>Id.</u> at 1259.  The court rejected this argument, stating that FDUTPA does not limit the Attorney General's enforcement authority to transactions only involving Florida residents. <u>Id.</u> at 1261. Furthermore, the court went on to state that FDUTPA seeks to prohibit unfair and deceptive

practices "which have transpired within the territorial boundaries of this state without limitation."
Id. at 1262.  The Court does not read this case as prohibiting a FDUTPA claim against NCOA, a
Florida corporation, which allegedly solicited consumers outside of the state of Florida with
deceptive advertising.  Instead, this case provides ample authority to find that Plaintiff can bring
a claim against NCOA, a Florida corporation, that allegedly harmed consumers located outside of
Florida.[8]  See also Renaissance Cruises, Inc. v. Glassman, 738 So.2d 436 (Fla. Dist. Ct.
App.1999) (FDUTPA is applicable to both in-state and out-of-state residents in a class action).[9]

_____  Here, Plaintiff has alleged harm from false advertising; i.e., that the advertisement stated
that the device protection service would protect him against loss of his cellular telephone.  After
making his insurance claim, NCOA informed Plaintiff that "loss" was an exclusion under the
policy.  As a result, Plaintiff suffered the monetary loss stemming from his purchase of the
insurance policy.  (First Am. Compl. ¶¶ 16-19.) Based on these facts, Plaintiff has stated a cause
of action under the FDUTPA.  See Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313, 1320
(S.D. Fla. 2004) (to state a claim under FDUTPA, an individual  must "allege sufficient facts to
show that he has been actually aggrieved by the unfair or deceptive act committed by the seller in

---

[8] With respect to Defendant's citation to Hutson v Rexall Sundown, Inc., 837 So. 2d 1090
(Fla. Dist. Ct. App. 2003), the Court notes that Hutson addressed whether common issues of law
existed among members of a nationwide class in a FDUTPA claim.  This argument is more
appropriate at the class certification stage, rather than at the pleading stage.

[9] NCOA points to language in Millennium that states "the allegations in this case reflect
that the offending conduct occurred entirely within this state" as support for its position.  The
complete sentence, however, states that "where the allegations in this case reflect that the
offending conduct occurred entirely within this state, we can discern no legislative intent for the
[Plaintiff] to be precluded from taking corrective measures under FDUTPA even where those
persons affected by the conduct reside outside of the state." Millennium, 761 So. 2d 1262
(emphasis added).  As such, the Court finds that, at the motion to dismiss state, Millennium does
not prevent Plaintiff from pursuing his FDUTPA claim.

the course of trade or commerce").[10]

      Based on the foregoing, the Court denies NCOA's motion to dismiss the FDUTPA

claims.

      C.  Count IV

      Plaintiff's cause of action for unjust enrichment alleges that Defendants have been

unjustly enriched through the sale of false and misleading insurance policies.  According to

NCOA, this claim is subject to dismissal because an unjust enrichment claim cannot survive

when an express contract exists.

      Even assuming that Plaintiff chooses to amend and pursue the now-dismissed breach of

contract claim, Plaintiff would not be prevented from pursuing an alternative claim for unjust

enrichment.   Simply put, NCOA's argument ignores the basic tenet of alternative pleading under

Rule 8(d)(2) of the Federal Rules of Civil Procedure. Manicini Enterprises, Inc. v. American

Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006).  While Plaintiff can only recover once for the

same actual damages, regardless of the number of alternative theories presented, he is not barred

against pleading unjust enrichment simply because he has also pled breach of contract in count

---

[10] NCOA also raises two arguments in its reply brief that it claims bars Plaintiff's
FDUTPA claims.  First, NCOA advances the argument that a comparison of Plaintiff's original
complaint and the exhibits attached thereto show that Plaintiff never read the insurance contract.
Based on that, NCOA states that Plaintiff should therefore not be permitted to bring a claim
pursuant to FDUTPA on the basis that the language of the contract was unclear.  NCOA also
argues that the voluntary payment doctrine bars Plaintiff's claims. Of course, raising an argument
in a reply memorandum does not provide Plaintiff with an opportunity to address Defendant's
contentions. As such, the Court will not consider these arguments. See Rule 7.1(C) of the
Southern District of Florida ("reply memorandum shall be strictly limited to rebuttal of matters
raised in the memorandum in opposition"); Tallahassee Mem. Regional Med. Ctr. v. Bowen, 815
F.2d 1435, 1446 n.16 (11th Cir. 1987) ("it is well settled that a party cannot argue an issue in its
reply brief that was not preserved in its initial brief") citing United States v. Oakley, 744 F.2d
1553, 1556 (11th Cir. 1984).

one.  "Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." <u>Williams v. Bear Stearns & Co.</u>, 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998).

Hence, NCOA's motion to dismiss Plaintiff's unjust enrichment claim is denied.

<u>D.  Count V</u>

Plaintiff alleges that Defendants have breached an express warranty provided by the insurance policy.  Notably, Plaintiff does not identify the express warranty allegedly breached by NCOA. Thus, this claim against NCOA must be re-pled and Plaintiff must take care to identify the warranty at issue. The Court will dismiss this claim and grant Plaintiff leave to amend against NCOA.

<u>E. Count VI</u>

The Declaratory Judgment Act, 28 U.S.C. § 2201 states in pertinent part:

(a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.  The Supreme Court has held that "[t]he Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." <u>Public Affairs Associates, Inc. v. Rickover</u>, 369 U.S. 111, 112 (1962).  "The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." <u>Allstate Ins. Co. v. Employers Liability Assur.</u>

Corp., 445 F.2d 1278, 1280 (5th Cir. 1971).[11]  "The purpose behind the Declaratory Judgment Act is to afford a [ ] form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations."  Casualty Indem. Exch. v. High Croft Enter., 714 F. Supp. 1190, 1193 (S.D. Fla. 1989).  The Declaratory Judgment Act "permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty."  See 10B C. Wright & A. Miller, Federal Practice & Procedure, Civil 3d § 2751 (2004).

Plaintiff seeks a declaration that the exclusions in the insurance contract cannot be used to deny the claims of consumers who report having lost their cellular telephones.  (First Am. Compl. ¶ 69.)  Plaintiff has failed to articulate a rationale for the Court to declare that the exclusions in the insurance contract should not be enforced.  Therefore, the Court will dismiss this claim and grant Plaintiff leave to amend this claim against NCOA.

F.  Class Allegations

After reviewing NCOA's argument relating to the class action allegations and taking into account Plaintiff's concession at the oral argument that the class must be narrowed to only include those individuals who actually made a claim under the insurance policy, the Court will allow Plaintiff to amend the complaint.  In so doing, Plaintiff should comply with Local Rule 23.1 of the Southern District of Florida.

---

[11] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.  See Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

<u>Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)       NCOA's Motion to Dismiss First Amended Complaint (DE 19) is **GRANTED IN PART AND DENIED IN PART**.

2)       Overstock's Motion to Dismiss First Amended Complaint, Stay Pending Arbitration and/or Transfer Venue (DE 22) is **GRANTED** to the extent it seeks a stay pending arbitration.  If appropriate, Plaintiff may seek to enforce an arbitration award that may be awarded in his favor.

3)       Plaintiff is granted leave to amend the First Amended Complaint in accordance with the directives set forth in this Order.  Moreover, each count shall set forth one claim per count and state with specificity both the factual and legal basis for the claim it sets forth.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 29th day of June, 2009.

                          KENNETH A. MARRA
                          United States District Judge